# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4859 | **DATE** | 5/8/2000 |
| **CASE TITLE** | Patrick Menard vs. City of Chicago, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 5/17/00 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant's motion for summary judgment is granted on all claims except plaintiff's claim for unlawful post arrest detention.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | MAY 09 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 76 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | | courtroom deputy's initials | date mailed notice | |
| | | | mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK MENARD,                          ) | |
| ) | |
| Plaintiff,                      ) | |
| ) | No.   98 C 4859 |
| v.                                       ) | |
| ) | Judge Robert W. Gettleman |
| CITY OF CHICAGO, DET. CAVANAUGH,         ) | |
| OFFICER M. JEDLOWSKI, (Star #14139),     ) | |
| OFFICER W. MUSZYNSKI (Star #10975),      ) | |
| OFFICER D. CAULFIELD (Star #10731),      ) | |
| OFFICER W. GAJDZINSKI (Star #13789),     ) | |
| OFFICER R. DOWNS (Star #17947) and       ) | |
| DEBORAH BALDWIN,                         ) | |
| ) | |
| Defendants.                     ) | |

DOCKETED
MAY 09 2000

## MEMORANDUM OPINION AND ORDER

Plaintiff Patrick Menard has brought a second amended complaint against the City of Chicago and Chicago Police Officers, Jedlowski, Muszynski, Caulfield, and Downs, and Detective Cavanaugh.[1] Counts I and II are claims against the individual officers for unlawful arrest, and illegal search and seizure in violation of the Fourth Amendment. Count III is a state law claim for false arrest and imprisonment against all defendants. All defendants have moved for summary judgment. For the reasons set forth below, the motions are granted in part and denied in part.

---

[1] Plaintiff's second amended complaint also contained claims against Deborah Baldwin for intentional infliction of emotional distress and defamation. On August 3, 1999, the court dismissed those claims, along with Baldwin's counterclaims against plaintiff, for lack of jurisdiction.

## Facts[2]

This case arises out of plaintiff's June 1, 1998, arrest by defendants Jedlowski, Muszynski, Caulfield and Downs, while plaintiff was on his way to a meeting with Deborah Baldwin to discuss a failed real estate transaction. Unbeknownst to plaintiff, earlier that day Baldwin had gone to the Eighth District Police Station and filed a sworn police report in which she charged plaintiff and Anthony Intini with defrauding her of $10,000 in connection with the real estate transaction. There she met first with District Commander Schinker, with whom she was well acquainted through her position as secretary to the alderman of the 15th ward, and then with Officer Gajdzinski, who took her report. Baldwin told the police that she had given a check to plaintiff and that he had cashed the check and given the proceeds to Intini, who then produced a false receipt. Baldwin further told the police that she believed that plaintiff was involved in the crime, but the report produced at her meeting with Gajdzinski lists plaintiff only as a witness.

That evening, Baldwin arranged a meeting with plaintiff and Intini at a White Castle located at the intersection between 79th Street and Western Avenue in Chicago, Illinois. Defendants Muszynski and Jedlowski were dispatched by radio to the White Castle where they met with Baldwin in the parking lot. Baldwin gave them a copy of her crime victim's report prepared that afternoon, and showed them some documents relating to the real estate sale and alleged theft, including a copy of the check made out to plaintiff for $10,000. Commander Schinker also arrived at the scene, and told the officers that Baldwin had indeed filed a report that afternoon.

---

[2]The facts are taken predominately from defendants' Local Rule 56.1(a)(3) Statement of Material Facts not in Dispute, to most of which plaintiff has failed to respond. This failure constitutes an admission pursuant to the Rule.

Very shortly after the officers arrived, plaintiff and Intini drove up in a blue Lincoln. Plaintiff was driving, and passed by Baldwin, Muszynski and Jedlowski, who were in uniform. The car then accelerated and drove out of the parking lot. Schinker then directed the officers to "go get them." The officers followed plaintiff's car with emergency lights on. Plaintiff pulled over after driving three blocks to Damen Avenue. The officers then arrested plaintiff and Intini. Defendants Caulfield and Downs were dispatched to help Muszynski and Jedlowski at the scene. The officers searched the car and trunk at its location on Damen Avenue. Plaintiff and Intini were originally brought back to the White Castle for brief questioning and then were taken to the Area I police facility at 51st Street and Wentworth Avenue, where they remained for several hours before being released. Upon release, plaintiff returned to his car and found that his brief case, which had been on the passenger seat, had been opened.

## Discussion

Plaintiff's claims for unlawful arrest and illegal search depend on whether the individual defendants had probable cause to arrest him. Defendants assert that Baldwin's crime victim report constituted probable cause, giving them authority to make the arrest. Police officers may arrest without a warrant if the information available to them at the time of the arrest indicates that the arrestee has committed a crime. An arrest is not unconstitutional merely because the information relied on by the officers later turns out to wrong. Henry v. United States, 361 U.S. 98 (1959). Probable cause is a fluctuating concept that depends on factual and practical considerations of every day life. BeVier v. Hucal, 806 F.2d 123, 126 (7th Cir. 1986). It is the totality of the circumstances, including the facts available to defendant, that are dispositive. Illinois v. Gates, 462 U.S. 213, 231 (9183).

3

In the instant case, Baldwin told the arresting officers that plaintiff and Intini had bilked her out of $10,000. She showed the officers her crime victim report supporting (at least as to Intini) her oral representations. She was at the scene and identified plaintiff and Intini to the officers. Commander Schinker, who is not named in the complaint, verified that Baldwin was a reliable witness and had filed the report, and then directed defendants "to get" plaintiff and Intini. "[A]s long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest." Jenkins v. Keating, 147 F.3d 577, 585 (7th Cir. 1998). Additionally, and most importantly, plaintiff and Intini immediately accelerated and fled the scene upon seeing Baldwin with the police. See Moore v. Marketplace Restaurant, 754 F.2d 1336 (7th Cir. 1984)(whether suspect flees the scene is a factor that can be taken into account in determining existence of probable cause).

Plaintiff argues that at most, defendants had enough information to stop and question him, but not enough to arrest him. Under plaintiff's theory, the officers should have investigated further prior to transporting Intini and him to the police station (conduct that plaintiff refers to as a "full fledged" arrest, as opposed to a Terry stop. See Terry v. Ohio, 392 U.S. 1 (1968). This case is not governed by Terry, however, because it does not involve a stop made pursuant to a reasonable, articulable suspicion that criminal activity was afoot. Id. Rather, the stop and arrest was made pursuant to a criminal complaint filed by a reliable victim..

How much investigation an officer must perform prior to effecting an arrest is always a question of delicate balance. Obviously, a police officer may not close his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation should be

4

pursued. BeVier, 806 F.2d at 127. In the instance case, defendants had enough information to reasonably believe that plaintiff and Intini had committed a crime. "[O]nce probable cause has been established, officials have no constitutional obligation to conduct further investigation in the hopes of uncovering potentially exculpatory evidence." Eversole v. Steele, 59 F.3d 710, 718 (7th Cir. 1995). Perhaps plaintiff would have a better argument if he had not fled the scene, but plaintiff's own unprovoked action of speeding away after seeing the officers served to reinforce Baldwin's accusations. "Headlong flight --wherever it occurs-- is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Illinois v. Wardlow, __U.S.__, 120 Sct. 673, 676 (2000) (flight can support reasonable suspicion). See also, Tom v. Vioda, 963 F.2d 952, 959 (7th Cir. 1992) (flight from a Terry stop provides probable cause to arrest suspect). Based on plaintiff's evasive behavior, coupled with Baldwin's representations and report, this court concludes that no reasonable jury could find that defendants acted without probable cause. Accordingly, defendants' motion for summary judgment on plaintiff's unlawful arrest and seizure claims (Counts I and II) is granted.

Finally, plaintiff contends that he was detained for four hours at the Area 1 police facility. Citing Gramenos v. Jewel Companies, Inc., 797 F.2d 432 (7th Cir. 1986), he contends that the four hour detention was too long and constituted a deprivation of his liberty in violation of the fourth amendment. In Gramenos, the plaintiff was detained for four hours at the police station following his arrest at 11:30 p.m. on a shoplifting charge. Recognizing that an arrest based upon probable cause provides legal justification for a brief period of detention to take administrative steps incident to arrest, the Seventh Circuit questioned whether an "unexplained four hours of

detention" was too long for a non-violent misdemeanor. 797 F.2d at 437. It therefore remanded the case for further proceedings on the issue. Id.

Defendants make no effort to distinguish Gramenos. Instead, they argue that plaintiff has no factual support for his argument that Detective Cavanaugh should have released him at 11:00 p.m., after Cavanaugh learned that Baldwin "did not have the documents needed to prove her allegations." Defendants' argument misses the mark. Under Gramenos, the police have a reasonable time to complete the administrative steps incident to the arrest. After the steps have been completed, the police must take the suspect before a magistrate to establish probable cause, or let the suspect go. Id. Although the Supreme Court has not delineated how long the "brief period" may last, the Seventh Circuit has held that four hours, particularly in the dead of night, requires explanation. Id. (Citing Moore, 754 F.2d at 1350-1352). Because defendants have provided no explanation for the four hour detention, their motion for summary judgment on plaintiff's unlawful post arrest detention claim is denied.

## Conclusion

For the reasons set forth above, defendants' motion for summary judgment is granted on all claims except plaintiff's claim for unlawful post arrest detention. This matter is set for a report on status on May 17, 2000, at 9:00 a.m.

**ENTER:  May 8, 2000**

                                                                                                          _____
                                                                                                          **Robert W. Gettleman**
                                                                                                          **United States District Judge**